Case.net:26CG-CC00272 - MRV BANKS V THOMAS A WUCHERER (E-CASE) - Docket Entries

**| Respond to Selected Documents |** **Sort by date:** Descending Ascending **Display options:** All Entries

**10/14/2026**

**Summons Personally Served**

Document ID - 26-SMCC-703; Served To - THOMAS ALLEN WUCHERER; Server - AGUSTIN, THERESA ; Served Date - 10/09/2026; Served Time - 12:36:16; Service Type - SP; Reason Description - SERV; Service Text -

**Notice of Service**

Affidavit of Service.

**Filed By:** TIMOTHY JOSEPH AHRENHOERSTERBAEUMER

**On Behalf Of:** MRV BANKS

**09/09/2026**

**Judge/Clerk - Note**

Per 57.280 RSMo, an additional court cost of $10.00 has been added to the case. Please submit payment as soon as possible.

**Order - Special Process Server**

Appointed as requested by: /s/ Jana Walther, Deputy Clerk

**Associated Entries: 09/08/2026 -**

**Motion Special Process Server**

+

**09/08/2026**

**Motion Special Process Server**

Motion for Appointment of Special Process Server; Proposed Order.

**Filed By:** TIMOTHY JOSEPH AHRENHOERSTERBAEUMER

**On Behalf Of:** MRV BANKS

**Associated Entries: 09/09/2026 -**

**Order - Special Process Server**

+

**09/01/2026**

**Summons Issued-Circuit**

Document ID: 26-SMCC-703, for WUCHERER, THOMAS ALLEN

**Case Review Scheduled**

**Scheduled For:** 12/14/2026; 9:00 AM; SCOTT ALAN LIPKE; Cape Girardeau (Jackson)

**08/21/2026**

**Filing Info Sheet eFiling**

**Filed By:** TIMOTHY JOSEPH AHRENHOERSTERBAEUMER

**CRIFS/Unredacted Document**

Confidential Redacted Information Filing Sheet in associated to Circuit Court filed on 08/21/2026.

**Filed By:** TIMOTHY JOSEPH AHRENHOERSTERBAEUMER

**On Behalf Of:** MRV BANKS

**Associated Entries: 08/21/2026 -**

**Pet Filed in Circuit Ct**

+

**Confid Filing Info Sheet Filed**

Filing Information Sheet.

**Filed By:** TIMOTHY JOSEPH AHRENHOERSTERBAEUMER

**On Behalf Of:** MRV BANKS

**Pet Filed in Circuit Ct**

Verified Petition for Breach of Guaranty; Exhibit 1 - Loan Agreement - Redacted; Exhibit 2 - Note - Redacted; Exhibit 3 - Security Agreement Assignment of Development Fee - Redacted; Exhibit 4 - Security Agreement - General Intangibles - Redacted; Exhibit 5 - Modification - Redacted; Exhibit 6 - COT Agreement - Redacted; Exhibit 7 - Guaranty - Redacted; Exhibit 8 - Notice of Default - Redacted.

**Filed By:** TIMOTHY JOSEPH AHRENHOERSTERBAEUMER

**On Behalf Of:** MRV BANKS

**Associated Entries: 08/21/2026 - CRIFS/Unredacted Document** +

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

**IN THE CIRCUIT COURT OF CAPE GIRARDEAU COUNTY
STATE OF MISSOURI**

| | | |
|---|---|---|
| MRV BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS ALLEN WUCHERER, | ) | |
| | ) | |
| Serve: 48 Panorama Crest Ave. | ) | |
| Las Vegas, Nevada 89135-7831 | ) | |
| | ) | |
| Defendant. | ) | |

**VERIFIED PETITION FOR BREACH OF GUARANTY**

Plaintiff MRV Banks, for its Verified Petition for Breach of Guaranty against Defendant Thomas Allen Wucherer, states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff MRV Banks ("MRV") is an independent locally owned community bank headquartered in Ste. Genevieve, Missouri, with branch offices in Cape Girardeau, Missouri.

2. Defendant Thomas Allen Wucherer ("Wucherer") is a natural person who resides in Las Vegas, Nevada.

3. This Court has subject-matter jurisdiction over this action under Article V, Section 14(a) of the Missouri Constitution and Mo. Rev. Stat. § 478.070.

4. This Court has personal jurisdiction over Wucherer under Mo. Rev. § 506.500.1 because the claims in this action arise from one or more contracts that he entered into in the State of Missouri.

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

5. This Court also has personal jurisdiction over Wucherer because he has substantial, continuous, and systematic contacts with the State of Missouri.

6. Venue is proper in this Court pursuant to Mo. Rev. Stat. § 508.010(4).

## GENERAL ALLEGATIONS

### THE LOAN

7. On March 17, 2023, MRV and DTH 215 Venture, LLC ("DTH Venture"), Legacy Henderson QOF, LLC ("Legacy Henderson") and DTH 215 Development, LLC ("DTH Development)", as Borrowers, and Sixty West Development, LLC ("Sixty West"), as Hypothecator, entered into a Business Loan Agreement ("Loan Agreement") attached hereto and incorporated by reference as **Exhibit 1**.

8. On or about March 17, 2023, DTH Venture, Legacy Henderson and DTH Development entered into a Commercial Promissory Note in favor of MRV in the principal sum of $3,000,000.00 ("Note") with a maturity date of April 5, 2024. The Note is attached hereto and incorporated by reference as **Exhibit 2**.

9. On March 17, 2023, DTH Venture, DTH Development and Sixty West entered into a Commercial Security Agreement ("Security Agreement – Assignment of Development Fee") in favor of MRV relative to an Assignment of Development Fee attached hereto and incorporated by reference as **Exhibit 3**.

10. On March 17, 2023 DTH Development and Legacy Henderson executed a Commercial Security Agreement ("Security Agreement – General Intangibles") in favor of MRV relative to General Intangibles attached hereto and incorporated by reference as **Exhibit 4**.

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

11. In accordance with the Loan Agreement, and in exchange for the Note, MRV loaned the sum of $3,000,000.00 ("Loan") to DTH Venture, Legacy Henderson and DTH Development.

12. The Security Agreement – Assignment of Development Fee and the Security Agreement – General Intangibles conveyed a security interest in those assets to secure the Note and all other obligations, debts and liabilities owed to MRV.

13. On November 10, 2023, MRV and Legacy Henderson and DTH Development, as Borrowers, and Sixty West and DTH Venture, as Hypothecators, entered into a Modified Loan Agreement ("Modification") attached hereto and incorporated by reference as **Exhibit 5.**

14. On November 10, 2023, Legacy Henderson and DTH Development, as Borrowers, entered into a Change in Terms Agreement ("COT Agreement") attached hereto and incorporated by reference as **Exhibit 6**. At the time of execution of the COT Agreement, the remaining balance due and/or existing debt on the original principal amount of the Loan was $2,678,306.27 with a maturity date of April 5, 2024.

**THE GUARANTY**

15. On March 17, 2023, Wucherer executed the Guaranty of Specific Transaction ("Guaranty") attached hereto and incorporated by reference as **Exhibit 7**.

16. In the Guaranty, Wucherer unconditionally, absolutely, and irrevocably guaranteed MRV the full and prompt payment and performance when due (whether at the maturity date or required prepayment, acceleration, or otherwise) of all indebtedness and

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

obligations to MRV in the principal amount of $3,000,000.00, plus interest, charges and fees provided for, including all extensions and renewals thereof, until MRV is fully paid.

17. Further, Wucherer agreed, to the extent permitted by law, to pay any and all expenses incurred in enforcing any rights under the Guaranty, including reasonable attorneys' fees, court costs and expenses.

18. The Loan Agreement, Note, Security Agreements, Modification and the Guaranty, and any and all other documents executed and delivered and/or related in any manner to the Loans are collectively referred to herein as the "Loan Documents."

19. On or about June 5, 2024, DTH Venture filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Nevada under Case Number 2:24-bk-12829-nmc.

**DEFAULTS**

20. Legacy Henderson and DTH Development, as Borrowers, defaulted under the Loan Documents by failing to make payments when due. In addition, DTH Venture, as Hypothecator, defaulted under the Loan Documents by filing a petition under federal bankruptcy law and was not discharged within thirty days after the filing.

21. On August 21, 2026, MRV notified Thomas Allen Wucherer by the letter attached hereto and incorporated by reference as **Exhibit 8** (the "Default Letter") of the default under Loan Documents and demanded immediate payment.

22. The Note entitles MRV to collect interest.

23. As of August 21, 2026, the debt owed on the Loan is $3,325,152.95, consisting of (a) $2,643,839.44 in principal; (b) $544,272.02 in accrued interest; (c)

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

$2,146.00 in fees; and (d) $134,895.49 in late charges. Interest continues to accrue on the Loan at $624.24 per diem.

24. MRV has reasonably incurred, and is continuing to incur expenses for legal services to protect its interests relating to the Loan.

25. Additionally, interest shall continue to accrue on the unpaid principal balance of the Loan under the terms of the Loan Documents until the unpaid principal balance is fully repaid.

26. MRV incorporates by reference the contents of each Exhibit to this Verified Petition as though those Exhibits were set forth fully in this petition.

**COUNT I – BREACH OF GUARANTY**

27. MRV incorporates by reference the preceding paragraphs of this Verified Petition as if fully set forth herein.

28. Wucherer gave the Guaranty to induce MRV to loan the sum of $3,000,000.00.

29. In the Guaranty, Wucherer absolutely, unconditionally and irrevocably guaranteed the payment and performance of indebtedness and obligations to MRV.

30. Wucherer delivered the Guaranty to MRV.

31. Relying on the Guaranty, MRV made the Loan of $3,000,000.00.

32. Wucherer did not make payments on the Loan when due.

33. By failing to make payments on the Loan when due, Wucherer materially breached the Guaranty.

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

34. As a result of the material breaches of the Guaranty, MRV suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that MRV incurred to recover those amounts, including but not limited to, attorneys' fees.

35. MRV has met all conditions precedent under the Guaranty.

WHEREFORE, Plaintiff MRV Banks respectfully requests that this Court enter judgment in its favor and against Defendant Thomas Allen Wucherer, for (a) $3,325,152.95; (b) interest that continues to accrue on the principal balances of the Loan; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the Loan that MRV Banks has incurred and will incur to protect or enforce its rights relating to the Loan; (d) any other amounts that Wucherer is obligated to pay MRV; (e) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just and proper under the circumstances.

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

Respectfully submitted,

SPENCER FANE LLP

By: /s/ *Timothy J. Ahrenhoersterbaeumer*
Timothy J. Ahrenhoersterbaeumer #55136
Kate Daus #77927
1 N. Brentwood, Suite 1200
St. Louis, Missouri 63105
(314) 863-7733 (telephone)
(314) 862-4656 (facsimile)
tahrenhoersterbaumer@spencerfane.com
kdaus@spencerfane.com

*Attorneys for Plaintiff MRV Banks*

## VERIFICATION

STATE OF MISSOURI )
) ss.
COUNTY OF CAPE GIRARDEAU )

I, Jeremy W. Schlosser, an officer of MRV Banks, have personal knowledge of the facts alleged in the foregoing petition, and to the best of my knowledge, information and belief those facts are true.

Jeremy W. Schlosser
Senior Vice President of Private Banking

Subscribed and sworn before me, a notary public in and for the county that is identified above, on 21st, August, 2026.

Notary Public

My commission expires:
8-5-28

LESLIE A. BROOKS
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
MY COMMISSION EXPIRES AUGUST 5, 2028
CAPE GIRARDEAU COUNTY
COMMISSION #20664089

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

**BUSINESS LOAN AGREEMENT**

**MRV Banks**
**871 Ste. Genevieve Drive**
**Ste. Genevieve, Missouri 63670**
**(573)883-8222**

| AGREEMENT DATE | LOAN NUMBER | AGREEMENT/ACCOUNT NUMBER |
|---|---|---|
| March 17, 2023 | [redacted]500 | [redacted]500 |

## BORROWER INFORMATION

DTH 215 VENTURE, LLC
718 West Business Highway 60
PO Box 633
Dexter, MO 63841

**Type of Business Entity:** Limited Liability Company
**State of Organization/Formation:** Nevada

Legacy Henderson QOF, LLC
718 W Business Highway 60
PO Box 639
Dexter, MO 63841-0639

**Type of Business Entity:** Limited Liability Company
**State of Organization/Formation:** Missouri

DTH 215 DEVELOPMENT, LLC
11261 Campsie Fells Court
Las Vegas, NV 89141

**Type of Business Entity:** Limited Liability Company
**State of Organization/Formation:** Nevada

## GUARANTOR INFORMATION

Stephen W Holden
1416 Nighthawk Pt
Naples, FL 34105-2789

**Type of Entity:** Individual
**State of Residence:** Missouri

Natalie D Riley
15118 County Road 612
Dexter, MO 63841

**Type of Entity:** Individual
**State of Residence:** Missouri

Thomas Allen Wucherer
48 Panorama Crest Ave
Las Vegas, NV 89135-7831

**Type of Entity:** Individual
**State of Residence:** Nevada

Jeffrey M Cruden
8465 Panorama Crest Avenue
LasVegas, NV 89113

**Type of Entity:** Individual
**State of Residence:** Nevada

## HYPOTHECATOR INFORMATION

Sixty West Development LLC
PO Box 639
Dexter, MO 63841-0639

**Type of Business Entity:** Corporation
**State of Organization/Formation:** Missouri

**AGREEMENT.** This Business Loan Agreement will be referred to in this document as the "Agreement." This Agreement is made by MRV Banks (Lender), DTH 215 VENTURE, LLC, Legacy Henderson QOF, LLC, and DTH 215 DEVELOPMENT, LLC (Borrower), Stephen W Holden, Natalie D Riley, Thomas Allen Wucherer, and Jeffrey M Cruden (Guarantor), and Sixty West Development LLC (Hypothecator). The consideration is the promises, representations, and warranties made in this Agreement and the Related Documents.

**DEFINITIONS.** These definitions are used in this Agreement.

**"Collateral"** means the Property that any Party to this Agreement or the Related Documents may pledge, mortgage, or give Lender a security interest in, regardless of where the Property is located and regardless of when it was or will be acquired, together with all replacements, substitutions, proceeds, and products of the Property.

**"Events of Default"** means any of the events described in the "Events of Default" section of this Agreement.

**"Financial Statements"** mean the balance sheets, earnings statements, and other financial information that any Party has, is, or will be giving to Lender.

**"Indebtedness"** means the Loan and all other loans and indebtedness of Borrower to Lender, including but not limited to Lender's payments of insurance or taxes, all amounts Lender pays to protect its interest in the Collateral, overdrafts in deposit accounts with Lender, and all other indebtedness, obligations, and liabilities of Borrower to Lender, whether matured or unmatured, liquidated or unliquidated, direct or indirect, absolute or contingent, joint or several, due or to become due, now existing or hereafter arising.

© 2004-2021 Compliance Systems, LLC e9f4c224-5b57655c - 2021.162.0.4


**EXHIBIT**
**1**

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

**"Loan"** means any loan or loans described in the "Identification of Loan" section of this Agreement.

**"Parties"** means any Borrower, Guarantor, and Hypothecator signing this Agreement.

**"Party"** means any Borrower, Guarantor, and Hypothecator signing this Agreement.

**"Property"** means the Parties' assets, regardless of what kind of assets they are.

**"Related Documents"** means all documents, promissory notes, security agreements, leases, mortgages, deeds of trust, construction loan agreements, assignments of leases and rents, guaranties, pledges, and all other documents or agreements executed in connection with this Agreement as such documents may be modified, amended, substituted, or renewed from time to time. The term includes both documents existing at the time of execution of this Agreement and documents executed after the date of this Agreement.

**IDENTIFICATION OF LOAN.** The following loan and all other indebtedness, obligations, and liabilities of Borrower to Lender, due or to become due, now existing or hereafter arising, as well as any and all amendments, modifications, extensions, and renewals thereof are subject to this Agreement:

• Loan Number 400777500 with a principal amount of $3,000,000.00

**BORROWER'S REPRESENTATIONS AND WARRANTIES.** The statements made in this section will continue and remain in effect until all of the Indebtedness is fully paid to Lender. Each Borrower represents and warrants to Lender the following:

**Borrower's Existence and Authority.** Each Borrower is duly formed and in good standing under all laws governing the Borrower and the Borrower's business, and each Borrower executing this Agreement has the power and authority to execute this Agreement and the Related Documents and to bind that Borrower to the obligation created in this Agreement and the Related Documents.

**Financial Information and Filing.** All Financial Statements provided to Lender have been prepared and will continue to be prepared in accordance with generally accepted accounting principles, consistently applied, and fully and fairly present the financial condition of each Borrower, and there has been no material adverse change in Borrower's business, Property, or condition, either financial or otherwise, since the date of Borrower's latest Financial Statements. Each Borrower has filed all federal, state, and local tax returns and other reports and filings required by law to be filed before the date of this Agreement and has paid all taxes, assessments, and other charges that are due and payable prior to the date of this Agreement. Each Borrower has made reasonable provision for these types of payments that are accrued but not yet payable. The Borrower does not know of any deficiency or additional assessment not disclosed in the Borrower's books and records.

All financial statements or records submitted to Lender via electronic means, including, but not limited to, facsimile, open internet communications or other telephonic or electronic methods, including, but not limited to, documents in Tagged Image Format Files ("TIFF") and Portable Document Format ("PDF") shall be treated as originals, and will be fully binding with full legal force and effect. Parties waive any right they may have to object to such treatment. Lender may rely on all such records in good faith as complete and accurate records produced or maintained by or on behalf of the Party submitting such records.

**Title and Encumbrances.** Borrower has good title to all of the Borrower's assets. All encumbrances on any part of the Property were disclosed to Lender in writing prior to the date of this Agreement.

**Compliance with General Law.** Each Borrower is in compliance with and will conduct its business and use its assets in compliance with all laws, regulations, ordinances, directives, and orders of any level of governmental authority that has jurisdiction over the Borrower, the Borrower's business, or the Borrower's assets.

**Environmental Laws.** Each Borrower is in compliance with all applicable laws and rules of federal, state, and local authorities affecting the environment, as all have been or are amended.

**No Litigation/No Misrepresentations.** There are no existing or pending suits or proceedings before any court, government agency, arbitration panel, administrative tribunal, or other body, or threatened against Borrower that may result in any material adverse change in the Borrower's business, property, or financial condition, and all representations and warranties in this Agreement and the Related Documents are true and correct and no material fact has been omitted.

**COVENANTS.** On the date of this Agreement and continuing until the Indebtedness is repaid and Borrower's obligations are fully performed, Borrower covenants as follows.

**Notices of Claims and Litigation/Notice of Adverse Events.** Borrower will promptly notify Lender in writing of all threatened and actual litigation, governmental proceeding, default, and every other occurrence that may have a material adverse effect on Borrower's business, financial condition, or the Property.

**DTH 215 VENTURE, LLC**.Management Prepared Financial Statements due 120 days after the end of each fiscal year in form acceptable to Lender.

**DTH 215 VENTURE, LLC**.Business Tax Returns within 120 days after the end of each fiscal Year in form acceptable to Lender.

**Legacy Henderson QOF, LLC**.Management Prepared Financial Statements due 120 days after the end of each fiscal year in form acceptable to Lender.

**Legacy Henderson QOF, LLC**.Business Tax Returns within 120 days after the end of each fiscal Year in form acceptable to Lender.

**DTH 215 DEVELOPMENT, LLC**.Management Prepared Financial Statements due 120 days after the end of each fiscal year in form acceptable to Lender.

**DTH 215 DEVELOPMENT, LLC**.Business Tax Returns within 120 days after the end of each fiscal Year in form acceptable to Lender.

**Stephen W Holden**.Personal Financial Statements due 12 months after the date of the previous statement submitted in form acceptable to Lender.

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

**Stephen W Holden**.Personal Tax Returns within 120 days after the end of each calendar Year in form acceptable to Lender.
**Natalie D Riley**.Personal Financial Statements due 12 months after the date of the previous statement submitted in form acceptable to Lender.
**Natalie D Riley**.Personal Tax Returns within 120 days after the end of each calendar Year in form acceptable to Lender.
**Thomas Allen Wucherer**.Personal Financial Statements due 12 months after the date of the previous statement submitted in form acceptable to Lender.
**Thomas Allen Wucherer**.Personal Tax Returns within 120 days after the end of each calendar Year in form acceptable to Lender.
**Jeffrey M Cruden**.Personal Financial Statements due 12 months after the date of the previous statement submitted in form acceptable to Lender.
**Jeffrey M Cruden**.Personal Tax Returns within 120 days after the end of each calendar Year in form acceptable to Lender.

**EVENTS OF DEFAULT.** The occurrence of any of the following events will be an Event of Default.

**Noncompliance with Lender Agreements.** Default by Borrower, Guarantor, or Hypothecator under any provision of this Agreement, the Related Documents, or any other agreement with Lender.

**False Statements.** If a Party made or makes a false or misleading misrepresentation in this Agreement, in the Related Documents, in any supporting material submitted to Lender or to third parties providing reports to Lender, or in Financial Statements given or to be given to Lender.

**Material Adverse Change.** Any material adverse change in the Borrower's business, financial condition, or the Property has occurred or is imminent; if the full performance of the obligations of any Party is materially impaired; or if the Collateral and its value or Lender's rights with respect thereto are materially impaired in any way. The existence or reasonable likelihood of litigation, governmental proceeding, default, or other event that may materially and adversely affect a Party's business, financial condition, or the Property.

**Insolvency or Liquidation.** A Party voluntarily suspends transaction of its business or does not generally pay debts as they mature. If a Party has or will make a general assignment for the benefit of creditors or will file, or have filed against it, any petition under federal bankruptcy law or under any other state or federal law providing for the relief of debtors if the resulting proceeding is not discharged within thirty days after filing. If a receiver, trustee, or custodian is or will be appointed for a Party.

**Default on Unrelated Debt.** If Borrower, Guarantor, or Hypothecator materially defaults under a provision of an agreement with a third party or if the indebtedness under such an agreement is accelerated.

**Judgments or Attachments.** If there is entered against a Party a judgment that materially affects the Borrower's business, financial condition, or the Property, or if a tax lien, levy, writ of attachment, garnishment, execution, or similar item is or will be issued against the Collateral or which materially affects Borrower's business, financial condition, or the Property, and which remains unpaid, unstayed on appeal, undischarged, unbonded, or undismissed for thirty days after it was issued.

**Collateral Impairment.** Lender has a good-faith belief that Lender's rights in the Collateral are or will soon be impaired or that the Collateral itself is or soon will be impaired.

**Termination of Existence or Change in Control.** If Borrower or Borrower's business is sold or merged or if Borrower or Borrower's business suspends business or ceases to exist.

**Insecurity.** If Lender has a good-faith belief that any Party is unable or will soon be unable to perform that Party's duties under this Agreement or under the Related Documents.

**Death.** The death of an individual who is a Party, a partner in a partnership that is a Party, a member in a limited liability company that is a Party, an officer of a corporation that is a Party, or an individual of similar position in any other type of business organization that is a Party.

**REMEDIES ON DEFAULT.**

**Remedies, No Waiver.** The remedies provided for in this Agreement, the Related Documents, and by law are cumulative and not exclusive. Lender reserves the right to exercise some, all, or none of its rights and reserves the right to exercise any right at any time that Lender has the right, without regard to how much time has passed since the right arose. Lender may exercise its rights in its sole, absolute discretion.

**Acceleration, Setoff.** Upon an Event of Default, the Loan and the Indebtedness may, at Lender's sole option, be declared immediately due and payable. Lender may apply the Parties' bank accounts and any other property held by Lender against the Indebtedness.

**ATTORNEYS' FEES AND OTHER COSTS.** Borrower agrees to pay all of Lender's costs and expenses incurred in connection with the enforcement of this Agreement, including without limitation, reasonable attorneys' fees, to the extent permitted by law.

**EXPENSES.** The Parties agree to pay all of Lender's reasonable expenses incidental to perfecting Lender's security interests and liens, all insurance premiums, Uniform Commercial Code search fees, and all reasonable fees incurred by Lender for audits, inspection, and copying of the Parties' books and records. The Parties also agree to pay all reasonable costs and expenses of Lender in connection with the enforcement of Lender's rights and remedies under this Agreement, the Related Documents, and any other agreement between one or more Parties and Lender, and in connection with the preparation of all amendments, modifications, and waivers of consent with respect to this Agreement, including reasonable attorneys' fees.

**GOVERNING LAW/PARTIAL ILLEGALITY.** This Agreement and the Related Documents are and will be governed by, and the rights of the Parties will be determined by the laws of the state of Missouri except to the extent that federal law controls. If any part, term, or provision of this Agreement is determined to be illegal or in conflict with state or federal law, the validity of the remaining portion or provisions of this Agreement will not be affected, unless the stricken portion or provision adversely affects Lender's risk of realizing Lender's anticipated return, in which case Lender may, in its sole discretion, deem the Loan matured.

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

**NOTICES.** All notices required under this Agreement must be in writing and will be considered given: (i) on the day of personal delivery, or (ii) one business day after deposit with a nationally recognized overnight courier service, or (iii) three business days after deposit with the United States Postal Service sent certified mail, return receipt requested. Any of these methods may be used to give notice. All notices must be sent to the party or parties entitled to notice at the addresses first set forth in this Agreement. Any Party may change its address for notice purposes on five days prior written notice to the other Parties.

**INTEGRATION AND AMENDMENT.** This Agreement and other written agreements among the Parties, including but not limited to the Related Documents, are the entire agreement of the Parties and will be interpreted as a group, one with the others. None of the Parties will be bound by anything not expressed in writing, and this Agreement cannot be modified except by a writing executed by those Parties burdened by the modification.

**FURTHER ACTION.** The Parties will, upon request of Lender, make, execute, acknowledge, and deliver to Lender the modified and additional instruments, documents, and agreements, and will take the further action that is reasonably required, to carry out the intent and purpose of this transaction.

**CONTINUING EFFECT.** Unless superseded by a later Business Loan Agreement, this Agreement will continue in full force and effect until all of the Parties' obligations to Lender are fully satisfied and the Loan and Indebtedness are fully repaid.

**HEADINGS.** All headings in this Agreement are included for reference only and do not have any effect on the interpretation of this Agreement.

**COUNTERPARTS.** This Agreement may be executed by the Parties using any number of copies of the Agreement. All executed copies taken together will be treated as a single Agreement.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Agreement.

**TRANSFERS.** Borrower may not assign or transfer its rights or obligations under this Agreement without Lender's prior written consent. Lender may transfer its interest in Lender's sole discretion. Borrower waives all rights of offset and counterclaim Borrower has against Lender. The purchaser of a participation in the loan may enforce its interest regardless of any claims or defenses Borrower has against Lender.

**JURISDICTION.** The Parties agree to waive any objection to jurisdiction or venue on the ground that the Parties are not residents of Lender's locality. The Parties authorize any action brought to enforce the Parties' obligations to be instituted and prosecuted in any state court having jurisdiction or in the United States District Court for the District that includes Lender's location as set forth at the beginning of this Agreement. The Parties authorize Lender to elect the court at Lender's sole discretion.

**ORAL AGREEMENTS DISCLAIMER. Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**By signing this Agreement, Borrower acknowledges reading, understanding and agreeing to all its provisions and receipt of a copy hereof.**

DTH 215 VENTURE, LLC

By: DTH 215 DEVELOPMENT, LLC, Manager

________________________________

By: Thomas Allen Wucherer Date
Its: Member

Legacy Henderson QOF, LLC

By: Holden Family, L.L.C., Manager

________________________________

By: Natalie D Riley Date
Its: Member

DTH 215 DEVELOPMENT, LLC

________________________________

By: Thomas Allen Wucherer Date
Its: Member

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

**NOTICES.** All notices required under this Agreement must be in writing and will be considered given: (i) on the day of personal delivery, or (ii) one business day after deposit with a nationally recognized overnight courier service, or (iii) three business days after deposit with the United States Postal Service sent certified mail, return receipt requested. Any of these methods may be used to give notice. All notices must be sent to the party or parties entitled to notice at the addresses first set forth in this Agreement. Any Party may change its address for notice purposes on five days prior written notice to the other Parties.

**INTEGRATION AND AMENDMENT.** This Agreement and other written agreements among the Parties, including but not limited to the Related Documents, are the entire agreement of the Parties and will be interpreted as a group, one with the others. None of the Parties will be bound by anything not expressed in writing, and this Agreement cannot be modified except by a writing executed by those Parties burdened by the modification.

**FURTHER ACTION.** The Parties will, upon request of Lender, make, execute, acknowledge, and deliver to Lender the modified and additional instruments, documents, and agreements, and will take the further action that is reasonably required, to carry out the intent and purpose of this transaction.

**CONTINUING EFFECT.** Unless superseded by a later Business Loan Agreement, this Agreement will continue in full force and effect until all of the Parties' obligations to Lender are fully satisfied and the Loan and Indebtedness are fully repaid.

**HEADINGS.** All headings in this Agreement are included for reference only and do not have any effect on the interpretation of this Agreement.

**COUNTERPARTS.** This Agreement may be executed by the Parties using any number of copies of the Agreement. All executed copies taken together will be treated as a single Agreement.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Agreement.

**TRANSFERS.** Borrower may not assign or transfer its rights or obligations under this Agreement without Lender's prior written consent. Lender may transfer its interest in Lender's sole discretion. Borrower waives all rights of offset and counterclaim Borrower has against Lender. The purchaser of a participation in the loan may enforce its interest regardless of any claims or defenses Borrower has against Lender.

**JURISDICTION.** The Parties agree to waive any objection to jurisdiction or venue on the ground that the Parties are not residents of Lender's locality. The Parties authorize any action brought to enforce the Parties' obligations to be instituted and prosecuted in any state court having jurisdiction or in the United States District Court for the District that includes Lender's location as set forth at the beginning of this Agreement. The Parties authorize Lender to elect the court at Lender's sole discretion.

**ORAL AGREEMENTS DISCLAIMER. Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**By signing this Agreement, Borrower acknowledges reading, understanding and agreeing to all its provisions and receipt of a copy hereof.**

DTH 215 VENTURE, LLC

By: DTH 215 DEVELOPMENT, LLC, Manager

T A. W 3/20/2023

By: Thomas Allen Wucherer Date
Its: Member

Legacy Henderson QOF, LLC

By: Holden Family, L.L.C., Manager

By: Natalie D Riley Date
Its: Member

DTH 215 DEVELOPMENT, LLC

T A W 3/20/2023

By: Thomas Allen Wucherer Date
Its: Member

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

**Stephen W Holden.**Personal Tax Returns within 120 days after the end of each calendar Year in form acceptable to Lender.
**Natalie D Riley.**Personal Financial Statements due 12 months after the date of the previous statement submitted in form acceptable to Lender.
**Natalie D Riley.**Personal Tax Returns within 120 days after the end of each calendar Year in form acceptable to Lender.
**Thomas Allen Wucherer.**Personal Financial Statements due 12 months after the date of the previous statement submitted in form acceptable to Lender.
**Thomas Allen Wucherer.**Personal Tax Returns within 120 days after the end of each calendar Year in form acceptable to Lender.
**Jeffrey M Cruden.**Personal Financial Statements due 12 months after the date of the previous statement submitted in form acceptable to Lender.
**Jeffrey M Cruden.**Personal Tax Returns within 120 days after the end of each calendar Year in form acceptable to Lender.

**EVENTS OF DEFAULT.** The occurrence of any of the following events will be an Event of Default.

**Noncompliance with Lender Agreements.** Default by Borrower, Guarantor, or Hypothecator under any provision of this Agreement, the Related Documents, or any other agreement with Lender.

**False Statements.** If a Party made or makes a false or misleading misrepresentation in this Agreement, in the Related Documents, in any supporting material submitted to Lender or to third parties providing reports to Lender, or in Financial Statements given or to be given to Lender.

**Material Adverse Change.** Any material adverse change in the Borrower's business, financial condition, or the Property has occurred or is imminent; if the full performance of the obligations of any Party is materially impaired; or if the Collateral and its value or Lender's rights with respect thereto are materially impaired in any way. The existence or reasonable likelihood of litigation, governmental proceeding, default, or other event that may materially and adversely affect a Party's business, financial condition, or the Property.

**Insolvency or Liquidation.** A Party voluntarily suspends transaction of its business or does not generally pay debts as they mature. If a Party has or will make a general assignment for the benefit of creditors or will file, or have filed against it, any petition under federal bankruptcy law or under any other state or federal law providing for the relief of debtors if the resulting proceeding is not discharged within thirty days after filing. If a receiver, trustee, or custodian is or will be appointed for a Party.

**Default on Unrelated Debt.** If Borrower, Guarantor, or Hypothecator materially defaults under a provision of an agreement with a third party or if the indebtedness under such an agreement is accelerated.

**Judgments or Attachments.** If there is entered against a Party a judgment that materially affects the Borrower's business, financial condition, or the Property, or if a tax lien, levy, writ of attachment, garnishment, execution, or similar item is or will be issued against the Collateral or which materially affects Borrower's business, financial condition, or the Property, and which remains unpaid, unstayed on appeal, undischarged, unbonded, or undismissed for thirty days after it was issued.

**Collateral Impairment.** Lender has a good-faith belief that Lender's rights in the Collateral are or will soon be impaired or that the Collateral itself is or soon will be impaired.

**Termination of Existence or Change in Control.** If Borrower or Borrower's business is sold or merged or if Borrower or Borrower's business suspends business or ceases to exist.

**Insecurity.** If Lender has a good-faith belief that any Party is unable or will soon be unable to perform that Party's duties under this Agreement or under the Related Documents.

**Death.** The death of an individual who is a Party, a partner in a partnership that is a Party, a member in a limited liability company that is a Party, an officer of a corporation that is a Party, or an individual of similar position in any other type of business organization that is a Party.

**REMEDIES ON DEFAULT.**

**Remedies, No Waiver.** The remedies provided for in this Agreement, the Related Documents, and by law are cumulative and not exclusive. Lender reserves the right to exercise some, all, or none of its rights and reserves the right to exercise any right at any time that Lender has the right, without regard to how much time has passed since the right arose. Lender may exercise its rights in its sole, absolute discretion.

**Acceleration, Setoff.** Upon an Event of Default, the Loan and the Indebtedness may, at Lender's sole option, be declared immediately due and payable. Lender may apply the Parties' bank accounts and any other property held by Lender against the Indebtedness.

**ATTORNEYS' FEES AND OTHER COSTS.** Borrower agrees to pay all of Lender's costs and expenses incurred in connection with the enforcement of this Agreement, including without limitation, reasonable attorneys' fees, to the extent permitted by law.

**EXPENSES.** The Parties agree to pay all of Lender's reasonable expenses incidental to perfecting Lender's security interests and liens, all insurance premiums, Uniform Commercial Code search fees, and all reasonable fees incurred by Lender for audits, inspection, and copying of the Parties' books and records. The Parties also agree to pay all reasonable costs and expenses of Lender in connection with the enforcement of Lender's rights and remedies under this Agreement, the Related Documents, and any other agreement between one or more Parties and Lender, and in connection with the preparation of all amendments, modifications, and waivers of consent with respect to this Agreement, including reasonable attorneys' fees.

**GOVERNING LAW/PARTIAL ILLEGALITY.** This Agreement and the Related Documents are and will be governed by, and the rights of the Parties will be determined by the laws of the state of Missouri except to the extent that federal law controls. If any part, term, or provision of this Agreement is determined to be illegal or in conflict with state or federal law, the validity of the remaining portion or provisions of this Agreement will not be affected, unless the stricken portion or provision adversely affects Lender's risk of realizing Lender's anticipated return, in which case Lender may, in its sole discretion, deem the Loan matured.

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

## AGREEMENT OF HYPOTHECATOR

Hypothecator (i) acknowledges reading and understanding this Agreement; (ii) consents to the provisions of this Agreement relating to Borrower; (iii) agrees to those portions of this Agreement that apply to Hypothecator; (iv) acknowledges that this Agreement has been freely executed without duress and after an opportunity to consult with counsel; and (v) confirms that Hypothecator received a copy of this Agreement, the Hypothecation Agreement, and the other documents Hypothecator requested.

Sixty West Development LLC

By: Natalie D Riley          Date
Its: Manager

## AGREEMENT OF GUARANTOR

Guarantor (i) acknowledges reading and understanding this Agreement; (ii) consents to the provisions of this Agreement relating to Borrower; (iii) agrees to furnish the Financial Statements to Lender that Lender reasonably requests; (iv) agrees to those portions of this Agreement that apply to Guarantor; (v) acknowledges that this Agreement has been freely executed without duress and after an opportunity to consult with counsel; and (vi) confirms that Guarantor received a copy of this Agreement, the Guaranty, and the other documents Guarantor requested.

Stephen W Holden          Date
Individually

Natalie D Riley          Date
Individually

Thomas Allen Wucherer          Date
Individually

Jeffrey M Cruden          Date
Individually

**LENDER:** MRV Banks

By: Jeremy W Schlosser          Date
Its: SVP of Private Banking

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

## AGREEMENT OF HYPOTHECATOR

Hypothecator (i) acknowledges reading and understanding this Agreement; (ii) consents to the provisions of this Agreement relating to Borrower; (iii) agrees to those portions of this Agreement that apply to Hypothecator; (iv) acknowledges that this Agreement has been freely executed without duress and after an opportunity to consult with counsel; and (v) confirms that Hypothecator received a copy of this Agreement, the Hypothecation Agreement, and the other documents Hypothecator requested.

Sixty West Development LLC

By: Natalie D Riley Date
Its: Manager

## AGREEMENT OF GUARANTOR

Guarantor (i) acknowledges reading and understanding this Agreement; (ii) consents to the provisions of this Agreement relating to Borrower; (iii) agrees to furnish the Financial Statements to Lender that Lender reasonably requests; (iv) agrees to those portions of this Agreement that apply to Guarantor; (v) acknowledges that this Agreement has been freely executed without duress and after an opportunity to consult with counsel; and (vi) confirms that Guarantor received a copy of this Agreement, the Guaranty, and the other documents Guarantor requested.

Stephen W Holden Date
Individually

Natalie D Riley Date
Individually

Thomas Allen Wucherer Date
Individually

Jeffrey M Cruden Date
Individually

**LENDER:** MRV Banks

By: Jeremy W Schlosser Date
Its: SVP of Private Banking

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

## AGREEMENT OF HYPOTHECATOR

Hypothecator (i) acknowledges reading and understanding this Agreement; (ii) consents to the provisions of this Agreement relating to Borrower; (iii) agrees to those portions of this Agreement that apply to Hypothecator; (iv) acknowledges that this Agreement has been freely executed without duress and after an opportunity to consult with counsel; and (v) confirms that Hypothecator received a copy of this Agreement, the Hypothecation Agreement, and the other documents Hypothecator requested.

Sixty West Development LLC

By: Natalie D Riley Date
Its: Manager

## AGREEMENT OF GUARANTOR

Guarantor (i) acknowledges reading and understanding this Agreement; (ii) consents to the provisions of this Agreement relating to Borrower; (iii) agrees to furnish the Financial Statements to Lender that Lender reasonably requests; (iv) agrees to those portions of this Agreement that apply to Guarantor; (v) acknowledges that this Agreement has been freely executed without duress and after an opportunity to consult with counsel; and (vi) confirms that Guarantor received a copy of this Agreement, the Guaranty, and the other documents Guarantor requested.

Stephen W Holden Date
Individually

Natalie D Riley Date
Individually

[signature] 3/20/2023
Thomas Allen Wucherer Date
Individually

[signature]
Jeffrey M Cruden Date
Individually

**LENDER:** MRV Banks

[signature]
By: Jeremy W Schlosser Date
Its: SVP of Private Banking

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

# COMMERCIAL PROMISSORY NOTE

**MRV Banks**
**871 Ste. Genevieve Drive**
**Ste. Genevieve, Missouri 63670**
**(573)883-8222**

| LOAN NUMBER | NOTE DATE | PRINCIPAL AMOUNT | MATURITY DATE |
|---|---|---|---|
| [redacted]500 | March 17, 2023 | $3,000,000.00 | April 5, 2024 |

**LOAN PURPOSE:** To provide funds to bridge the funding gap associated with "The Watermark", a mixed-use development in Henderson, Nevada.

## BORROWER INFORMATION

DTH 215 VENTURE, LLC
718 West Business Highway 60
PO Box 633
Dexter, MO 63841

Legacy Henderson QOF, LLC
718 W Business Highway 60
PO Box 639
Dexter, MO 63841-0639

DTH 215 DEVELOPMENT, LLC
11261 Campsie Fells Court
Las Vegas, NV 89141

**NOTE.** This Commercial Promissory Note will be referred to in this document as the "Note."

**LENDER.** "Lender" means MRV Banks whose address is 871 Ste. Genevieve Drive, Ste. Genevieve, Missouri 63670, its successors and assigns.

**BORROWER.** "Borrower" means each person or legal entity identified above in the BORROWER INFORMATION section who signs this Note.

**PROMISE TO PAY.** For value received, receipt of which is hereby acknowledged, on or before April 5, 2024 (the "Maturity Date"), the Borrower promises to pay the principal amount of Three Million and 00/100 Dollars ($3,000,000.00) or such lesser amount as shall have been advanced by Lender, from time to time, to or on behalf of Borrower under the terms of this Note, and all interest on the outstanding principal balance and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. The Borrower will make all payments in lawful money of the United States of America.

**PAYMENT SCHEDULE.** This Note will be paid according to the following schedule: 11 consecutive payments of interest only beginning on May 5, 2023 and continuing on the same day of each month thereafter. One final balloon payment shall be due on the Maturity Date in an amount equal to the then unpaid principal and accrued and unpaid interest.

**APPLICATION OF PAYMENTS.** All payments received by the Lender from the Borrower for application to this Note may be applied to the Borrower's obligations under this Note in such order as determined by the Lender.

**INTEREST.**

**Interest Rate and Scheduled Payment Changes.** Interest will begin to accrue on March 17, 2023 . The interest rate on this Note will be fixed at 8.500 % per annum.

**Compliance with Law.** Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. If, however, from any circumstances, Borrower pays interest at a greater rate than the maximum allowed by law, the obligation to be fulfilled will be reduced to an amount computed at the highest rate of interest permissible under applicable law and if, for any reason whatsoever, Lender ever receives interest in an amount which would be deemed unlawful under applicable law, such interest shall be automatically applied to amounts owed, in Lender's sole discretion, or as otherwise allowed by applicable law.

**Accrual Method.** Interest on this Note is calculated on an **Actual/360** day basis. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**Default Rate.** The unpaid balance of this loan after the Maturity Date, whether by acceleration or otherwise, shall be subject to a post-maturity rate of interest equal to 21.000% per annum.

**LATE PAYMENT CHARGE.** If any required payment is more than 15 days late, then at Lender's option, Lender will assess a late payment charge of 5.000% of the amount of the regularly scheduled payment then past due, subject to a minimum charge of $25.00.

**PREPAYMENT PENALTY.** This Note may be prepaid, in full or in part, at any time, without penalty.

**ADVANCES.**

***General.*** The Borrower and Lender agree that the Borrower may borrow up to the maximum amount of principal only one time. Advances by Lender under this Note are discretionary and the Lender may, in its sole discretion, refuse to make advances. Without limiting the foregoing, Principal advances will not be made to the Borrower if any of the following conditions exist:

- The maximum amount on this Note has been reached or is outstanding.
- Borrower has breached any of the terms, provisions, representations, requirements or promises contained in this Note, the Related Documents, or any other agreement.
- Borrower makes a request for an advance after the Maturity Date.
- The Note or any other agreement relating to the extension of credit is in default.
- The Lender has deemed itself insecure or there has been a material adverse change of conditions.
- The Lender is precluded by law from making the advance.



EXHIBIT
2

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

***Requests.*** Advances under this Note may be requested orally, electronically or in writing by the Borrower or by an authorized person..
***Advance Amounts.*** The initial advance will be in the amount of $808,332.00.
***Limits on Advances.*** The total of any advance requested and unpaid principal cannot exceed the available principal amount. The available principal amount refers to the principal amount minus the aggregate amount of outstanding advances.
***Account.*** All advances will be charged to a loan account in Borrower's name on Lender's books, and the Lender shall debit in such account the amount of each advance made to, and credit to such account the amount of each repayment made by Borrower.

**SECURITY TO NOTE.** Security for this Note is granted pursuant to the following security document(s):

- Security Agreement dated March 17, 2023 evidencing security interest in Assignment of the Co-General Partnership (GP) interest held within "The Watermark" along with the Development Fee associated. All interest of Debtor embodied in or arising out of Debtors status as a Member in DTH 215 Venture, LLC, a Delaware limited liability company (the "Company"), including, but not limited to, (a) all of Debtor's general intangibles related to present and future economic interest, draws, guaranteed payments, earnings, dividends, and rights to share in the profits and losses, to receive distributions and to receive allocations of income, gain, loss, deductions and credits to which the Debtor is entitled to as a Member of the Company; (b) all rights as a Member in the Company and all other non-economic interest arising under or with respect to the Company, including without limitation, all rights to vote, consent to action and otherwise participate in the management of the Company; (c) all general intangibles related to present and future rights of Debtor to receive payments or other distributions from the Company, including, without limitation, (i)any and all proceeds, profits and distributions of any kind whatsoever now or hereafter paid or payable to Debtor by the Company whether such be in cash or in kind or mixed and howsoever evidenced and whether the same be by way of income distribution due on complete or partial dissolution, or distribution due on account of refinancing, (ii)all of Debtor's rights to payment from the Company for services rendered on behalf of, goods sold to, or loans or other credit extended to or for the benefit of, the Company (whether evidenced by an instrument, chattel paper, entry on the Company's books and records, or otherwise), and (iii)all cash and non-cash proceeds of the foregoing; and (d) all books, records, organizational documents, financial documents, account information and computer records necessary to continue the operation of the business.
- Security Agreement dated March 17, 2023 evidencing security interest in Assignment of Development Fee as stated in Development Agreement between DTH 215 VENTURE, LLC and DTH 215 Development, LLC and Sixty West Development, LLC dated August 30, 2021..

**GUARANTY.** In support of this transaction, a Guaranty dated March 17, 2023 has been executed by Stephen W Holden; a Guaranty dated March 17, 2023 has been executed by Natalie D Riley; a Guaranty dated March 17, 2023 has been executed by Thomas Allen Wucherer; and a Guaranty dated March 17, 2023 has been executed by Jeffrey M Cruden.

**RIGHT OF SET-OFF.** To the extent permitted by law, Borrower agrees that Lender has the right to set-off any amount due and payable under this Note, whether matured or unmatured, against any amount owing by Lender to Borrower including any or all of Borrower's accounts with Lender. This shall include all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. Such right of set-off may be exercised by Lender against Borrower or against any assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor of Borrower, or against anyone else claiming through or against Borrower or such assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor, notwithstanding the fact that such right of set-off has not been exercised by Lender prior to the making, filing or issuance or service upon Lender of, or of notice of, assignment for the benefit of creditors, appointment or application for the appointment of a receiver, or issuance of execution, subpoena or order or warrant. Lender will not be liable for the dishonor of any check when the dishonor occurs because Lender set-off a debt against Borrower's account. Borrower agrees to hold Lender harmless from any claim arising as a result of Lender exercising Lender's right to set-off.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments, and any other documents or agreements executed in connection with the indebtedness evidenced hereby this Note whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Note by reference thereto, with the same force and effect as if fully set forth herein.

**DEFAULT.** Upon the occurrence of any one of the following events (each, an "Event of Default" or "default" or "event of default"), Lender's obligations, if any, to make any advances will, at Lender's option, immediately terminate and Lender, at its option, may declare all indebtedness of Borrower to Lender under this Note immediately due and payable without further notice of any kind notwithstanding anything to the contrary in this Note or any other agreement: (a) Borrower's failure to make any payment on time or in the amount due; (b) any default by Borrower under the terms of this Note or any other Related Documents; (c) any default by Borrower under the terms of any other agreement between Lender and Borrower; (d) the death, dissolution, or termination of existence of Borrower or any guarantor; (e) Borrower is not paying Borrower's debts as such debts become due; (f) the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or any guarantor or the appointment of a receiver; (g) any default under the terms of any other indebtedness of Borrower to any other creditor; (h) any writ of attachment, garnishment, execution, tax lien or similar instrument is issued against any collateral securing the loan, if any, or any of Borrower's property or any judgment is entered against Borrower or any guarantor; (i) any part of Borrower's business is sold to or merged with any other business, individual, or entity; (j) any representation or warranty made by Borrower to Lender in any of the Related Documents or any financial statement delivered to Lender proves to have been false in any material respect as of the time when made or given; (k) if any guarantor, or any other party to any Related Documents terminates, attempts to terminate or defaults under any such Related Documents; (l) Lender has deemed itself insecure or there has been a material adverse change of condition of the financial prospects of Borrower or any collateral securing the obligations owing to Lender by Borrower. Upon the occurrence of an event of default, Lender may pursue any remedy available under any Related Document, at law or in equity.

**GENERAL WAIVERS.** To the extent permitted by law, the Borrower severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest, and any other notice and defense due to extensions of time or other indulgence by Lender or to any

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Note shall be joint and several, to the extent of their respective obligations.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Note is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Note without invalidating the remainder of either the affected provision or this Note.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Note shall be binding on all heirs, executors, administrators, assigns, and successors of Borrower.

**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Note or any of its rights and powers under this Note without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Note or any benefit accruing to it hereunder without the express written consent of the Lender.

**DUTY TO NOTIFY.** Borrower agrees to notify Lender if there is any change in the beneficial ownership information provided to Lender. Additionally, Borrower agrees to provide Lender with updated beneficial ownership information in the event there is any change in the beneficial ownership information provided to Lender.

**ORAL AGREEMENTS DISCLAIMER. Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**GOVERNING LAW.** This Note is governed by the laws of the state of Missouri except to the extent that federal law controls.

**HEADING AND GENDER.** The headings preceding text in this Note are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Note shall be construed to be of such gender or number as the circumstances require.

**ATTORNEY'S FEES, COSTS, AND EXPENSES.** Borrower agrees to pay all of Lender's costs, fees, and expenses arising out of or related to the enforcement of this Note or the relationship between the parties. Included in the fees that Lender may recover from Borrower are the reasonable attorney's fees that Lender incurs, including all fees incurred in the course of representing Lender before, during, or after any lawsuit, arbitration, or other proceeding and those incurred in appeals, whether the issues arise out of contract, tort, bankruptcy, or any other area of law. Included in the costs and expenses which Lender may recover are all court, alternative dispute resolution or other collection costs, and all expenses incidental to perfecting Lender's security interests and liens, preserving the collateral (including payment of taxes and insurance), records searches, and expenses related to audits, inspection, and copying. All costs and expenses Lender is entitled to recover shall accrue interest at the highest rate set forth hereunder or in any of the Related Documents.

**ADDITIONAL PROVISIONS.** FINANCIAL INFORMATION: I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**By signing this Note, Borrower acknowledges reading, understanding, and agreeing to all its provisions and receipt hereof.**

DTH 215 VENTURE, LLC

By: DTH 215 DEVELOPMENT, LLC, Manager

[signature] 3/20/2023

By: Thomas Allen Wucherer Date
Its: Member

Legacy Henderson QOF, LLC

By: Holden Family, L.L.C., Manager

By: Natalie D Riley Date
Its: Member

DTH 215 DEVELOPMENT, LLC

[signature] 3/20/2023

By: Thomas Allen Wucherer Date
Its: Member

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

**LENDER:** MRV Banks

By: Jeremy W Schlosser Date
Its: SVP of Private Banking

© 2004-2021 Compliance Systems, LLC 855bdcca-2f4fc1cd - 2021.162.0.4

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Note shall be joint and several, to the extent of their respective obligations.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Note is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Note without invalidating the remainder of either the affected provision or this Note.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Note shall be binding on all heirs, executors, administrators, assigns, and successors of Borrower.

**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Note or any of its rights and powers under this Note without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Note or any benefit accruing to it hereunder without the express written consent of the Lender.

**DUTY TO NOTIFY.** Borrower agrees to notify Lender if there is any change in the beneficial ownership information provided to Lender. Additionally, Borrower agrees to provide Lender with updated beneficial ownership information in the event there is any change in the beneficial ownership information provided to Lender.

**ORAL AGREEMENTS DISCLAIMER. Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**GOVERNING LAW.** This Note is governed by the laws of the state of Missouri except to the extent that federal law controls.

**HEADING AND GENDER.** The headings preceding text in this Note are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Note shall be construed to be of such gender or number as the circumstances require.

**ATTORNEY'S FEES, COSTS, AND EXPENSES.** Borrower agrees to pay all of Lender's costs, fees, and expenses arising out of or related to the enforcement of this Note or the relationship between the parties. Included in the fees that Lender may recover from Borrower are the reasonable attorney's fees that Lender incurs, including all fees incurred in the course of representing Lender before, during, or after any lawsuit, arbitration, or other proceeding and those incurred in appeals, whether the issues arise out of contract, tort, bankruptcy, or any other area of law. Included in the costs and expenses which Lender may recover are all court, alternative dispute resolution or other collection costs, and all expenses incidental to perfecting Lender's security interests and liens, preserving the collateral (including payment of taxes and insurance), records searches, and expenses related to audits, inspection, and copying. All costs and expenses Lender is entitled to recover shall accrue interest at the highest rate set forth hereunder or in any of the Related Documents.

**ADDITIONAL PROVISIONS.** FINANCIAL INFORMATION: I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**By signing this Note, Borrower acknowledges reading, understanding, and agreeing to all its provisions and receipt hereof.**

DTH 215 VENTURE, LLC

By: DTH 215 DEVELOPMENT, LLC, Manager

______________________________

By: Thomas Allen Wucherer Date
Its: Member

Legacy Henderson QOF, LLC

By: Holden Family, L.L.C., Manager

______________________________

By: Natalie D Riley Date
Its: Member

DTH 215 DEVELOPMENT, LLC

______________________________

By: Thomas Allen Wucherer Date
Its: Member

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

**LENDER:** MRV Banks

By: Jeremy W Schlosser Date
Its: SVP of Private Banking

© 2004-2021 Compliance Systems, LLC 855bdcca-2f4fc1cd - 2021.162.0.4
Commercial Promissory Note - DL4006



www.compliancesystems.com

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

# COMMERCIAL SECURITY AGREEMENT

**MRV Banks**
**871 Ste. Genevieve Drive**
**Ste. Genevieve, Missouri 63670**
**(573)883-8222**

| LOAN NUMBER | AGREEMENT DATE | |
|---|---|---|
| [redacted]500 | March 17, 2023 | |

## BORROWER INFORMATION

DTH 215 VENTURE, LLC
718 West Business Highway 60
PO Box 633
Dexter, MO 63841

Legacy Henderson QOF, LLC
718 W Business Highway 60
PO Box 639
Dexter, MO 63841-0639

DTH 215 DEVELOPMENT, LLC
11261 Campsie Fells Court
Las Vegas, NV 89141

## COLLATERAL OWNER INFORMATION

DTH 215 VENTURE, LLC
718 West Business Highway 60
PO Box 633
Dexter, MO 63841

DTH 215 DEVELOPMENT, LLC
11261 Campsie Fells Court
Las Vegas, NV 89141

Sixty West Development LLC
PO Box 639
Dexter, MO 63841-0639

**AGREEMENT.** "Agreement" means this Commercial Security Agreement.

**BORROWER.** "Borrower" means DTH 215 VENTURE, LLC, Legacy Henderson QOF, LLC, and DTH 215 DEVELOPMENT, LLC.

**DEBTOR.** "Debtor" means DTH 215 VENTURE, LLC Sixty West Development LLC and DTH 215 DEVELOPMENT, LLC.

**LENDER.** "Lender" means MRV Banks whose address is 871 Ste. Genevieve Drive, Ste. Genevieve, Missouri 63670, its successors and assigns.

**SECURITY INTEREST GRANT.** Debtor, in consideration of the Obligations, hereby agrees to all of the terms of this Agreement and further hereby specifically grants Lender a continuing security interest in the Collateral. Debtor further grants Lender a security interest in the proceeds of said Collateral; the proceeds of hazard insurance and eminent domain or condemnation awards involving the Collateral; all products of, substitutions, replacements, and accessions to such Collateral or interests therein; any and all deposits or other sums at any time credited by or due from Lender to Debtor; and any and all instruments, documents, policies, and certificates of insurance, securities, goods, accounts receivable, choses in action, chattel paper, cash, property, and the proceeds thereof (whether or not the same are Collateral or proceeds thereof hereunder), owned by Debtor or in which Debtor has an interest which are now or at any time hereafter in possession or control of Lender, or in transit by mail or carrier to or from Lender, or in possession of any third party acting on Lender's behalf, without regard to whether Lender received the same in pledge, for safekeeping, as agent or otherwise, or whether Lender has conditionally released the same. Debtor's grant of a continuing security interest in the Collateral secures to Lender the payment of all Obligations, including all renewals and extensions thereof, whether heretofore, now, or hereafter existing or arising and howsoever incurred or evidenced, whether primary, secondary, contingent, or otherwise.

**DESCRIPTION OF COLLATERAL.** The collateral covered by this Agreement (the "Collateral") is all of the Debtor's property described below which the Debtor now owns or may hereafter acquire or create and all proceeds and products thereof, whether tangible or intangible, including proceeds of insurance and which may include, but shall not be limited to, any items listed on any schedule or list attached hereto.

**Specific Collateral.** "Specific" refers to the specific property, together with all related rights, described below.
SPECIFIC COLLATERAL DESCRIPTION: Assignment of Development Fee as stated in Development Agreement between DTH 215 VENTURE, LLC and DTH 215 Development, LLC and Sixty West Development, LLC dated August 30, 2021.

**OBLIGATIONS.** "Obligations" means any and all of Borrower's obligations to Lender, whether they arise under this Agreement or the note, loan agreement, guaranty, or other evidence of debt executed in connection with this Agreement, or under any other mortgage, trust deed, deed of trust, security deed, security agreement, note, lease, instrument, contract, document, or other similar writing heretofore, now, or hereafter executed by the Borrower to Lender, including any renewals, extensions and modifications thereof, and including oral agreements and obligations arising by operation of law. The Obligations include all interest and all of Lender's costs, fees, and expenses recoverable pursuant to this Agreement, any other agreement between the parties, or under applicable law, including all such costs, fees, and expenses that may arise after the filing of any petition by or against Borrower or Debtor under the Bankruptcy Code, irrespective of whether the Obligations do not accrue because of an automatic stay.

**CROSS-COLLATERALIZATION.** Debtor agrees that any security interest provided in Collateral under this Agreement or any Collateral provided in connection with any and all other indebtedness of Debtor or Borrower to Lender, whether or not such indebtedness is related by class or claim and whether or not contemplated by the parties at the time of executing each evidence of indebtedness, shall act as Collateral for all said indebtedness. This cross-collateralization provision shall not apply to any Collateral that is/are household goods or a principal dwelling.



EXHIBIT
3

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

**FUTURE ADVANCES AND AFTER-ACQUIRED PROPERTY.** Future advances may be made at any time by the Lender under this Agreement to the extent allowed by law. The security interest grant contained in this Agreement also applies to any Collateral of the type(s) identified in this Agreement that the Debtor acquires after this Agreement is executed, except that no security interest attaches to after-acquired consumer goods unless the Debtor acquires rights in such goods within 10 days of Lender giving value. In anticipation of future advances by Lender, the Debtor authorizes Lender to file any necessary financing statements to protect Lender's security interest.

**RELATED DOCUMENTS.** "Related Documents" means all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents, and any other documents or agreements executed in connection with this Agreement whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Agreement by reference thereto, with the same force and effect as if fully set forth herein.

**GENERAL REPRESENTATIONS, WARRANTIES, AND COVENANTS.** Debtor represents, warrants, and covenants the following:

**Debtor's Existence and Organization.** Debtor is fully formed and in good standing under all laws governing Debtor and Debtor's business. Debtor has or will provide Lender with documentation regarding Debtor's state of organization or formation, and Debtor further warrants that Debtor will not change Debtor's state of organization or formation without Lender's prior written consent. Debtor will assist Lender with any changes to any documents, filings, or other records resulting or required by any change in the Debtor's state of organization or formation. The execution of this Agreement will not create any breach of any provision of the Debtor's organizational documents.

**Authority.** Debtor has the power and authority to execute this Agreement and the Related Documents and to bind Debtor to the obligations created in this Agreement and the Related Documents. The execution of this Agreement will not create any breach of any other agreement to which the Debtor is or may become a party. Debtor has obtained all licenses, permits, and the like which Debtor is required by law to file or obtain, and all such taxes and fees for such licenses and permits required to be paid have been paid in full.

**Debtor's Name.** Debtor will not conduct business under any name other than that given at the beginning of this Agreement, nor change, nor reorganize the type of business entity as described, except upon the prior written approval of Lender, in which event the Debtor agrees to execute any documentation of whatsoever character or nature required by Lender for filing or recording, at the Debtor's expense, before such change occurs.

**Business Address.** Debtor will keep all records of account, documents, evidence of title, and all other documentation regarding its business and the Collateral at the address specified at the beginning of this Agreement, unless notice thereof is given to Lender at least ten (10) days prior to the change of any address for the keeping of such records.

**Title.** Debtor has or will acquire free and clear title to all of the Collateral, unless otherwise provided herein. All of the Collateral exists and is or will be actual property of the Debtor.

**No Encumbrances or Transfer of Collateral.** Debtor will not allow or permit any lien, security interest, adverse claim, charge, or encumbrance of any kind against the Collateral or any part thereof without Lender's prior written consent. Except as otherwise provided under this Agreement, Debtor will not, without Lender's prior written consent, sell assign, transfer, lease, charter, encumber, hypothecate, or dispose of the Collateral or any part thereof or any interest therein nor will Debtor offer to sell, assign, transfer, lease, charter, encumber, hypothecate, or dispose of the Collateral or any part thereof or any interest therein.

**Priority.** The security interest granted to Lender shall be a first security interest unless Lender specifically agrees otherwise, and Debtor will defend the same against the claims and demands of all persons.

**Facilitation of Security Interest.** Debtor will fully cooperate in placing, perfecting, and maintaining Lender's lien or security interest against or in the Collateral and Debtor agrees to take whatever actions requested by Lender to perfect and continue Lender's security interest in the Collateral. Debtor specifically authorizes the Lender to file the necessary financing statements to perfect the Lender's security interest in the Collateral.

**Location of Collateral.** All of the Collateral is located in the state where the Debtor is located, as identified in this Agreement, unless otherwise certified to and agreed to by Lender, or, alternatively, is in possession of the Lender. Debtor will not remove or change the location of any Collateral without Lender's prior written consent and will allow the Lender to inspect the Collateral upon reasonable request.

**Use of Collateral.** Debtor will use the Collateral only in the conduct of its own business, in a careful and proper manner. Debtor will not use the Collateral or permit it to be used for any unlawful purpose.

**Good Condition and Repair.** Debtor will, at all times, maintain the Collateral in good condition and repair.

**Financial Information and Filing.** All financial information and statements delivered by Debtor to Lender have been prepared in accordance with generally accepted accounting principles consistently applied, and fully and fairly present the financial condition of Debtor and there has been no material adverse change in Debtor's business, Collateral, or condition, either financial or otherwise, since Debtor last submitted any financial information to Lender. Debtor has filed all federal, state and local tax returns and other reports and filings required by law to be filed before the date of this Agreement and has paid all taxes, assessments, and other charges that are due and payable prior to the date of this Agreement. Debtor has made reasonable provision for these types of payments that are accrued but not yet payable. Debtor does not know of any deficiency or additional assessment not disclosed in the Debtor's books and records.

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

**No Litigation.** There are no existing or pending suits or proceedings, including set-off or counterclaim, which are threatened or pending against Debtor which may result in any material adverse change in Debtor's financial condition or which might materially affect any of the Collateral. Debtor will promptly notify Lender in writing of all threatened and actual litigation, governmental proceedings, default, and every other occurrence that may have a material adverse effect on Debtor's business, financial condition, or the Collateral.

**No Misrepresentations.** All representations and warranties in this Agreement and the Related Documents are true and correct and no material fact has been omitted.

**INSURANCE.** The Debtor agrees that it will, at its own expense, fully insure the Collateral against all loss or damage for any risk of whatsoever nature in such amounts, with such companies, and under such policies as shall be satisfactory to the Lender. Lender will be named as loss payee, or at Lender's request, as mortgagee, and, if requested by Lender, all insurance policies shall include a lender's loss payable endorsement. The Lender is granted a security interest in the proceeds of such insurance and may apply such proceeds as it may receive toward the payment of the Obligations, whether or not due, in such order as the Lender may in its sole discretion determine. The Debtor agrees to maintain, at its own expense, public liability and property damage insurance upon all its other property, to provide such policies in such form as the Lender may approve, and to furnish the Lender with copies of other evidence of such policies and evidence of the payments of the premiums thereon. All policies of insurance shall provide for a minimum 10 days' written notice of cancellation to Lender. At the request of Lender, such policies of insurance shall be delivered to and held by Lender. Debtor agrees that Lender is authorized to act as attorney for Debtor in obtaining, adjusting, settling, and canceling such insurance and endorsing any drafts or instruments issued or connected with such insurance. Debtor specifically authorizes Lender to disclose information obtained in conjunction with this Agreement and from policies of insurance to prospective insurers of the Collateral. If the Debtor at any time fails to obtain or to maintain any of the insurance required above or pay any premium in whole or in part relating thereto, the Lender, without waiving any default hereunder, may make such payment or obtain such policies as the Lender, in its sole discretion, deems advisable to protect the Debtor's property. All costs incurred by the Lender, including reasonable attorneys' fees, court costs, expenses, and other charges thereby incurred, shall become a part of the Obligations and shall be payable on demand.

Unless Debtor provides evidence of the insurance coverage required by this Agreement, Lender may purchase insurance at Debtor's expense to protect Lender's interest in the Collateral. This insurance may, but need not, protect Debtor's interests. The coverage that Lender purchases may not pay any claim that Debtor makes or any claim that is made against Debtor in connection with the Collateral. Debtor may later cancel any insurance purchased by Lender, but only after providing evidence that Debtor has obtained insurance as required by this Agreement. If Lender purchases insurance for the Collateral, Debtor will be responsible for the costs of that insurance, including the insurance premium, interest and other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Debtor's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Debtor may be able to obtain on their own.

**ADDITIONAL COLLATERAL.** In the event that Lender should, at any time, determine that the Collateral or Lender's security interest in the Collateral is impaired, insufficient, or has declined or may decline in value, or if Lender should deem that payment of the Obligations is insecure, time being of the very essence, then Lender may require, and Debtor agrees to furnish, additional Collateral that is satisfactory to Lender. Lender shall provide notice as provided for in this Agreement to Debtor regarding additional Collateral. Lender's request for additional Collateral shall not affect any other subsequent right of Lender to request additional Collateral.

**FINANCING STATEMENT(S) AND LIEN PERFECTION.** Lender is authorized to file a conforming financing statement or statements to perfect its security interest in the Collateral, as provided in Revised Article 9, Uniform Commercial Code - Secured Transactions. Debtor agrees to provide such information, supplements, and other documents as Lender may from time to time require to supplement or amend such financing statement filings, in order to comply with applicable state or federal law and to preserve and protect the Lender's rights in the Collateral. The Debtor further grants the Lender a power of attorney to execute any and all documents necessary for the Lender to perfect or maintain perfection of its security interest in the Collateral, and to change or correct any error on any financing statement or any other document necessary for proper placement of a lien on any Collateral which is subject to this Agreement.

**LANDLORD'S WAIVER.** Upon request, Debtor shall furnish to Lender, in a form and upon such terms as are acceptable to Lender, a landlord's waiver of all liens with respect to any Collateral covered by this Agreement that is or may be located upon leased premises.

**RELATIONSHIP TO OTHER AGREEMENTS.** This Agreement and the security interests (and pledges and assignments, as applicable) herein granted are in addition to (and not in substitution, novation or discharge of) any and all prior or contemporaneous security agreements, security interest, pledges, assignments, mortgages, liens, rights, titles, or other interests in favor of Lender or assigned to Lender by others in connection with the Obligations. All rights and remedies of Lender in all such agreements are cumulative.

**TAXES, LIENS, ETC.** The Debtor agrees to pay all taxes, levies, judgments, assessments, and charges of any nature whatsoever relating to the Collateral or to the Debtor's business. If the Debtor fails to pay such taxes or other charges, the Lender, at its sole discretion, may pay such charges on behalf of the Debtor; and all sums so dispensed by the Lender, including reasonable attorneys' fees, court costs, expenses, and other charges relating thereto, shall become a part of the Obligations and shall be payable on demand.

**ENVIRONMENTAL HAZARDS.** Debtor certifies that as to any real estate which has been, is now, or will be in the future owned or occupied by Debtor, that such real estate has not in the past, nor will now or in the future be allowed in any manner to be exposed to or contain hazardous or environmentally harmful substances as may be defined or regulated by any local, state or federal law or regulation which impacts, in any way, such substances, except to the extent the existence of such substances has been presently disclosed in writing to Lender, and Debtor will immediately notify Lender in writing of any assertion made by any party to the contrary. Debtor indemnifies and holds Lender and Lender's directors, officers, employees, and agents harmless from any liability or expense of whatsoever nature, including reasonable attorneys' fees, incurred directly or indirectly as a result of Debtor's involvement with hazardous or environmentally harmful substances as may be defined or

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

regulated as such under any local, state or federal law or regulation or Debtor's ownership or occupation of any real estate upon which any hazardous or environmentally harmful substance is or was previously located.

**PROTECTION OF COLLATERAL.** Debtor agrees that Lender may, at Lender's sole option, whether before or after any event of default, and without prior notice to Debtor, take the following actions to protect Lender's interest in the Collateral: (a) pay for the maintenance, preservation, repair, improvement, or testing of the Collateral; (b) pay any filing, recording, registration, licensing, certification, or other fees and charges related to the Collateral; or (c) take any other action to preserve and protect the Collateral or Lender's rights and remedies under this Agreement, as Lender may deem necessary or appropriate from time to time. Debtor agrees that Lender is not obligated and has no duty whatsoever to take the foregoing actions. Debtor further agrees to reimburse Lender promptly upon demand for any payment made or any expenses incurred by Lender pursuant to this authorization. Payments and expenditures made by Lender under this authorization shall constitute additional Obligations, shall be secured by this Agreement, and shall bear interest thereon from the date incurred at the maximum rate of interest, including any default rate, if one is provided, as set forth in the notes secured by this obligation.

**INFORMATION AND REPORTING.** The Debtor agrees to supply to the Lender such financial and other information concerning its affairs and the status of any of its assets as the Lender, from time to time, may reasonably request. The Debtor further agrees to permit the Lender, its employees, and agents, to have access to the Collateral for the purpose of inspecting it, together with all of the Debtor's other physical assets, if any, and to permit the Lender, from time to time, to verify Accounts, if any, as well as to inspect, copy, and to examine the books, records, and files of the Debtor.

**DEFAULT.** The occurrence of any of the following events shall constitute a default of this Agreement: (a) the non-payment, when due (whether by acceleration of maturity or otherwise), of any amount payable on any of the Obligations or any extension or renewal thereof; (b) the failure to perform any agreement of the Debtor contained herein or in any other agreement Debtor has or may have with Lender; (c) the publication of any statement, representation, or warranty, whether written or oral, by the Debtor to the Lender, which at any time is untrue in any respect as of the date made; (d) the condition that any Debtor becomes insolvent or unable to pay debts as they mature, or makes an assignment for the benefit of the Debtor's creditors, or conveys substantially all of its assets, or in the event of any proceedings instituted by or against any Debtor alleging that such Debtor is insolvent or unable to pay debts as they mature (failure to pay being conclusive evidence of inability to pay); (e) Debtor makes application for appointment of a receiver or any other legal custodian, or in the event that a petition of any kind is filed under the Federal Bankruptcy Code by or against such Debtor and the resulting proceeding is not discharged within thirty days after filing; (f) the entry of any judgment against any Debtor, or the issue of any order of attachment, execution, sequestration, claim and delivery, or other order in the nature of a writ levied against the Collateral; (g) the death of any Debtor who is a natural person, or of any partner of any Debtor that is a partnership; (h) the dissolution, liquidation, suspension of normal business, termination of existence, business failure, merger, or consolidation or transfer of a substantial part of the property of any Debtor which is a corporation, limited liability company, partnership, or other non-individual business entity; (i) the Collateral or any part of the Collateral declines in value in excess of normal wear, tear, and depreciation or becomes, in the judgment of Lender, impaired, unsatisfactory, or insufficient in character or value, including but not limited to the filing of a competing financing statement; breach of warranty that the Debtor is the owner of the Collateral free and clear of any encumbrances (other than those encumbrances disclosed by Debtor or otherwise made known to Lender, and which were acceptable to Lender at the time); sale of the Collateral (except in the ordinary course of business) without Lender's express written consent; failure to keep the Collateral insured as provided herein; failure to allow Lender to inspect the Collateral upon demand or at reasonable time; failure to make prompt payment of taxes on the Collateral; loss, theft, substantial damage, or destruction of the Collateral; and, when Collateral includes inventory, accounts, chattel paper, or instruments, failure of account debtors to pay their obligations in due course; or (j) the Lender in good faith, believes the Debtor's ability to repay the Debtor's indebtedness secured by this Agreement, any Collateral, or the Lender's ability to resort to any Collateral, is or soon will be impaired, time being of the very essence.

**REMEDY.** Upon the occurrence of an event of default, Lender, at its option, shall be entitled to exercise any one or more of the remedies described in this Agreement, in all documents evidencing the Obligations, in any other agreements executed by or delivered by Debtor for benefit of Lender, in any third-party security agreement, mortgage, pledge, or guaranty relating to the Obligations, in the Uniform Commercial Code of the state of Missouri, and all remedies at law and equity, all of which shall be deemed cumulative. The Debtor agrees that, whenever a default exists, all Obligations may (notwithstanding any provision in any other agreement), at the sole option and discretion of the Lender and without demand or notice of any kind, be declared, and thereupon immediately shall become due and payable; and the Lender may exercise, from time to time, any rights and remedies, including the right to immediate possession of the Collateral, available to it under applicable law. The Debtor agrees, in the case of default, to assemble, at its own expense, all Collateral at a convenient place acceptable to the Lender. The Lender shall, in the event of any default, have the right to take possession of and remove the Collateral, with or without process of law, and in doing so, may peacefully enter any premises where the Collateral may be located for such purpose. Debtor waives any right that Debtor may have, in such instance, to a judicial hearing prior to such retaking. The Lender shall have the right to hold any property then in or upon said Collateral at the time of repossession not covered by the security agreement until return is demanded in writing by Debtor. The Lender may sell, lease, or otherwise dispose of the Collateral, by public or private proceedings, for cash or credit, without assumption of credit risk. Unless the Collateral is perishable or threatens to decline speedily in value or of a type customarily sold on a recognized market, Lender will send Debtor reasonable notice of the time and place of any public sale or of the time after which any private sale or other disposition will be made. Any notification of intended disposition of the Collateral by the Lender shall be deemed to be reasonable and proper if sent United States mail, postage prepaid, electronic mail, facsimile, overnight delivery or other commercially reasonable means to the Debtor at least ten (10) days before such disposition, and addressed to the Debtor either at the address shown herein or at any other address provided to Lender in writing for the purpose of providing notice. Proceeds received by Lender from disposition of the Collateral may be applied toward Lender's expenses and other obligations in such order or manner as Lender may elect. Debtor shall be entitled to any surplus if one results after lawful application of the proceeds. If the proceeds from a sale of the Collateral are insufficient to extinguish the Obligations, the parties obligated thereon shall be liable for a deficiency. Lender shall have the right, whether before or after default, to collect and receipt for, compound, compromise, and settle,

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

and give releases, discharges, and acquittances with respect to, any and all amounts owed by any person or entity with respect to the Collateral. Lender may remedy any default and may waive any default without waiving the default remedied and without waiving any other prior or subsequent default. The rights and remedies of the Lender are cumulative, and the exercise of any one or more of the rights or remedies shall not be deemed an election of rights or remedies or a waiver of any other right or remedy.

**EXERCISE OF LENDER'S RIGHTS.** Any delay on the part of the Lender in exercising any power, privilege, or right hereunder, or under any other document executed by Debtor to the Lender in connection herewith, shall not operate as a waiver thereof, and no single or partial exercise thereof or any other power, privilege, or right shall preclude other or further exercise thereof. The waiver by the Lender of any default of the Debtor shall not constitute a waiver of subsequent default.

**CONTINUING AGREEMENT.** This is a continuing agreement and the security interest (and pledge and assignment, as applicable) hereby granted and all of the terms and provisions of this Agreement shall be deemed a continuing agreement and shall remain in full force and effect until the Obligations are paid in full. In the event that Lender should take additional Collateral, or enter into other security agreements, mortgages, guarantees, assignments, or similar documents with respect to the Obligations, or should Lender enter into other such agreements with respect to other obligations of Debtor, such agreements shall not discharge this Agreement, which shall be construed as cumulative and continuing and not alternative and exclusive.

Any attempted revocation or termination shall only be effective if explicitly confirmed in a signed writing issued by Lender to such effect and shall in no way impair or affect any transactions entered into or rights created or liabilities incurred or arising prior to such revocation or termination, as to which this Agreement shall be truly operative until same are repaid and discharged in full. Unless otherwise required by applicable law, Lender shall be under no obligation to issue a termination statement or similar document unless Debtor requests same in writing, and providing further, that all Obligations have been repaid and discharged in full and there are no commitments to make advances, incur any obligations, or otherwise give value.

**ABSENCE OF CONDITIONS OF LIABILITY.** This Agreement is unconditional. Lender shall not be required to exhaust its remedies against Debtor, other collateral, guarantors, or any third party, or pursue any other remedies within Lender's power before being entitled to exercise its remedies hereunder. Lender's rights to the Collateral shall not be altered by the lack of validity or enforceability of the Obligations against Debtor, and this Agreement shall be fully enforceable irrespective of any counterclaim which the Debtor may assert on the underlying debt and notwithstanding any stay, modification, discharge, or extension of Debtor's Obligation arising by virtue of Debtor's insolvency, bankruptcy, or reorganization, whether occurring with or without Lender's consent.

**NOTICES.** Any notice or demand given by Lender to Debtor in connection with this Agreement, the Collateral, or the Obligations, shall be deemed given and effective upon deposit in the United States mail, postage prepaid, electronic mail, facsimile, overnight delivery or other commercially reasonable means addressed to Debtor at the address designated at the beginning of this Agreement, or such other address as Debtor may provide to Lender in writing from time to time for such purposes. Actual notice to Debtor shall always be effective no matter how such notice is given or received.

**WAIVERS.** Debtor waives notice of Lender's acceptance of this Agreement, defenses based on suretyship, and to the fullest extent permitted by law, any defense arising as a result of any election by Lender under the Bankruptcy Code or the Uniform Commercial Code. Debtor and any maker, endorser, guarantor, surety, third-party pledgor, and other party executing this Agreement that is liable in any capacity with respect to the Obligations hereby waive demand, notice of intention to accelerate, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor, and any other similar notice whatsoever. Debtor further waives any defense arising by reason of a disability or other defense of any third party or by reason of the cessation from any cause whatsoever of the liability of any third party.

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Agreement shall be joint and several, to the extent of their respective obligations.

**SEVERABILITY.** Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law; but, in the event any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity and shall be severed from the rest of this Agreement without invalidating the remainder of such provision or the remaining provisions of this Agreement.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Agreement shall be binding on all heirs, executors, administrators, assigns, and successors of Debtor.

**ASSIGNABILITY.** Lender may assign, pledge, or otherwise transfer this Agreement or any of its rights and powers under this Agreement without notice, with all or any of the Obligations, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Debtor may not assign this Agreement or any benefit accruing to it hereunder without the express written consent of the Lender.

**AUTHORIZATIONS.** When Debtor is not the Borrower, Debtor authorizes Lender, without notice or demand and without altering Debtor's liability or Lender's rights hereunder, from time to time to take acts which may alter the Obligation of Debtor to Lender or Debtor's right to restitution or subrogation or both, including to the extent allowed by law:

(a) Renewing, compromising, extending, or otherwise changing the time for payment of, or otherwise changing the terms of the Obligations or any part thereof, including increasing the rate of interest;
(b) Extending additional credit to Debtor in any manner for any purpose;
(c) Incurring costs, including attorneys' fees, with respect to enforcing Lender's rights with respect to the Obligations, and Collateral securing the Obligations;

© 2004-2021 Compliance Systems, LLC 8528c272-5e12f0d2 - 2021.162.0.4

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

(d) Exchanging, enforcing, waiving, or releasing (whether intentionally or unintentionally) any security for the Obligations or any part thereof or purchase such security at private or public sale and to file any financing statements necessary for Lender to perfect or protect Lender's security interest;
(e) Settling, releasing, compromising with, or substituting any one or more endorsers, guarantors, or other obligors or the Obligations;
(f) Impairing the value of Lender's interest in Collateral through failure to obtain or maintain protection, failure to obtain or maintain recordation of an interest, or through failure to perform a duty owed to Debtor to preserve the Collateral; and
(g) Applying all monies received from Debtor and others or from Collateral in Lender's discretion without in any way being required to marshal assets.

**ATTORNEY'S FEES, COSTS, AND EXPENSES.** Debtor agrees to pay all of Lender's costs, fees, and expenses arising out of or related to the enforcement of this Agreement or the relationship between the parties. Included in the fees that Lender may recover from Debtor are the reasonable attorney's fees that Lender incurs, including all fees incurred in the course of representing Lender before, during, or after any lawsuit, arbitration, or other proceeding and those incurred in appeals, whether the issues arise out of contract, tort, bankruptcy, or any other area of law. Included in the costs and expenses which Lender may recover are all court, alternative dispute resolution or other collection costs, and all expenses incidental to perfecting Lender's security interests and liens, preserving the Collateral (including payment of taxes and insurance), records searches, and expenses related to audits, inspection, and copying. All costs and expenses Lender is entitled to recover shall accrue interest at the highest rate set forth in any of the Related Documents.

**GOVERNING LAW.** This Agreement has been delivered in the State of Missouri and shall be construed in accordance with the laws of that state.

**HEADINGS AND GENDER.** The headings preceding text in this Agreement are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Agreement shall be construed to be of such gender or number as the circumstances require.

**COUNTERPARTS.** This Agreement may be executed by the parties using any number of copies of the Agreement. All executed copies taken together will be treated as a single Agreement.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of all obligations of Debtor.

**INTERPRETATION AND CONSTRUCTION.** Except as otherwise defined in this Agreement, all terms herein shall have the meanings provided by the Uniform Commercial Code as it has been adopted in the state of Missouri. Any ambiguities between this Agreement and any loan agreement executed by the Debtor in conjunction with this Agreement shall be resolved using the provisions of the loan agreement, to the extent necessary to eliminate any such ambiguity.

**RELEASE OF LIABILITY.** Debtor releases Lender from any liability which might otherwise exist for any act or omission of Lender related to the collection of any debt secured by this Agreement or the disposal of any Collateral, except for the Lender's willful misconduct.

**ORAL AGREEMENTS DISCLAIMER. Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**By signing this Agreement, Debtor acknowledges reading, understanding, and agreeing to all its provisions and receipt of a copy hereof.**

DTH 215 VENTURE, LLC

By: DTH 215 DEVELOPMENT, LLC, Manager

By: Thomas Allen Wucherer Date
Its: Member

DTH 215 DEVELOPMENT, LLC

By: Thomas Allen Wucherer Date
Its: Member

Sixty West Development LLC

By: Natalie D Riley Date
Its: Manager

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

(d) Exchanging, enforcing, waiving, or releasing (whether intentionally or unintentionally) any security for the Obligations or any part thereof or purchase such security at private or public sale and to file any financing statements necessary for Lender to perfect or protect Lender's security interest;
(e) Settling, releasing, compromising with, or substituting any one or more endorsers, guarantors, or other obligors or the Obligations;
(f) Impairing the value of Lender's interest in Collateral through failure to obtain or maintain protection, failure to obtain or maintain recordation of an interest, or through failure to perform a duty owed to Debtor to preserve the Collateral; and
(g) Applying all monies received from Debtor and others or from Collateral in Lender's discretion without in any way being required to marshal assets.

**ATTORNEY'S FEES, COSTS, AND EXPENSES.** Debtor agrees to pay all of Lender's costs, fees, and expenses arising out of or related to the enforcement of this Agreement or the relationship between the parties. Included in the fees that Lender may recover from Debtor are the reasonable attorney's fees that Lender incurs, including all fees incurred in the course of representing Lender before, during, or after any lawsuit, arbitration, or other proceeding and those incurred in appeals, whether the issues arise out of contract, tort, bankruptcy, or any other area of law. Included in the costs and expenses which Lender may recover are all court, alternative dispute resolution or other collection costs, and all expenses incidental to perfecting Lender's security interests and liens, preserving the Collateral (including payment of taxes and insurance), records searches, and expenses related to audits, inspection, and copying. All costs and expenses Lender is entitled to recover shall accrue interest at the highest rate set forth in any of the Related Documents.

**GOVERNING LAW.** This Agreement has been delivered in the State of Missouri and shall be construed in accordance with the laws of that state.

**HEADINGS AND GENDER.** The headings preceding text in this Agreement are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Agreement shall be construed to be of such gender or number as the circumstances require.

**COUNTERPARTS.** This Agreement may be executed by the parties using any number of copies of the Agreement. All executed copies taken together will be treated as a single Agreement.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of all obligations of Debtor.

**INTERPRETATION AND CONSTRUCTION.** Except as otherwise defined in this Agreement, all terms herein shall have the meanings provided by the Uniform Commercial Code as it has been adopted in the state of Missouri. Any ambiguities between this Agreement and any loan agreement executed by the Debtor in conjunction with this Agreement shall be resolved using the provisions of the loan agreement, to the extent necessary to eliminate any such ambiguity.

**RELEASE OF LIABILITY.** Debtor releases Lender from any liability which might otherwise exist for any act or omission of Lender related to the collection of any debt secured by this Agreement or the disposal of any Collateral, except for the Lender's willful misconduct.

**ORAL AGREEMENTS DISCLAIMER. Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**By signing this Agreement, Debtor acknowledges reading, understanding, and agreeing to all its provisions and receipt of a copy hereof.**

DTH 215 VENTURE, LLC

By: DTH 215 DEVELOPMENT, LLC, Manager

[signature] 3/20/2023

By: Thomas Allen Wucherer Date
Its: Member

DTH 215 DEVELOPMENT, LLC

[signature] 3/20/2023

By: Thomas Allen Wucherer Date
Its: Member

Sixty West Development LLC

By: Natalie D Riley Date
Its: Manager

Electronically Filed - Cape Girardeau (Jackson) - August 21, 2026 - 02:16 PM

**LENDER:** MRV Banks

By: Jeremy W Schlosser Date
Its: SVP of Private Banking

© 2004-2021 Compliance Systems, LLC 8528c272-5e12f0d2 - 2021.162.0.4
Commercial - Security Agreement DL4008

www.compliancesystems.com